UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 07-211 (MJD/JSM) |
| Plaintiff, | |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| ANTHONY ISAAC WILLIAMS, | |
| Defendant. | |

The above matter came on before the undersigned upon Anthony Isaac Williams's Pretrial Motion to Suppress Evidence [Docket No. 14]; Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 15] and Motion to Suppress Statements, Admissions and Answers [Docket No. 16]. Assistant United States LeeAnn Bell appeared on behalf of the Government; Assistant Federal Public Defender Lyonel Norris appeared on behalf of defendant, who was personally present.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). Based upon the record,[1] it is recommended that Anthony Isaac Williams's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 15] and Motion to Suppress Statements, Admissions and Answers [Docket No. 16] be denied.

---

[1] The Government did not provide the Court with any post-hearing memorandum.

**ANALYSIS**

**I.      MOTION TO SUPRESS EVIDENCE**

Williams has moved the Court to suppress the evidence obtained in the execution of the April 13, 2007 search warrant (Government Ex. 1) for his person and for a residence located in St. Paul, Minnesota.  The search warrant at issue allowed law enforcement officers to search for weapons, ammunition, cocaine and other controlled substances, drug paraphernalia, items used for drug distribution, cell phones, and records.  See Government Ex. 1.  The search warrant also authorized an unannounced entry.  Id.  Williams's counsel represented at the hearing that he did not have a legal basis to suppress the evidence seized pursuant to the search warrant.[2]  Instead, defense counsel wanted "another set of eyes" to look at the face of the search warrant to determine if it was supported by sufficient probable cause.

Searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.  Illinois v. Gates, 462 U.S. 213, 236 (1983).  Hearsay evidence is allowable for this purpose.  Gooding v. United States, 416 U.S. 430, 439 n. 6 (1974).  The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit. . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238 (emphasis added).

---

[2]      Defendant's motion to suppress evidence should be denied on this basis alone.

In reviewing this decision of the issuing court, the duty of this Court is simply to ensure that the issuing court had a substantial basis for concluding that probable cause existed. Id. at 238-39 (citation omitted). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

Here, the contents of the search warrant application and affidavit provided probable cause for the search of defendant's person and the St. Paul residence. The following information was provided in the search warrant application's affidavit:

- Ramsey County Deputy Sheriff Douglas Wood met with a Confidential Reliable Informant ("CRI") who provided information about the possession of firearms and sales of large amounts of cocaine by an individual named "Dino", whose real name was Anthony Williams. The CRI stated that Williams lived with his wife "Char" at the St. Paul residence.

- The CRI claimed that he had seen Dino and Char selling large amounts of cocaine at various locations outside of their St. Paul residence. Deputy Wood drove by the St. Paul residence to confirm the address given to him by the CRI. The CRI also provided Deputy Wood with two cell phone numbers given to the CRI by Anthony Williams, for the purpose of contacting Anthony Williams should the CRI wish to purchase cocaine.

- Deputy Wood researched the Minnesota Driver and Vehicle Service Records and the Ramsey County Sheriff jail records for Anthony Williams and found an individual named Anthony Isaac Williams, DOB 8-11-65 and also found an individual named Chartiase Moneet Williams. Deputy Wood obtained photographs from these records and showed them to the CRI, who positively identified the persons in the photographs as Dino and Char.

- Deputy Wood contacted the United States Postal Service regarding the St. Paul residence and was informed that both Anthony and Chartiase Williams both received mail at this residence. Records from Xcel Energy regarding the St. Paul residence showed that Anthony Williams was the current subscriber for the St. Paul residence, with a telephone number that matched

- one of the cell phone numbers given to the CRI by Anthony Williams. The subscriber information obtained from T-Mobile regarding the cell phone numbers given to the CRI by Anthony Williams included that the date of birth of the subscriber was 8-11-65, which matched the date of birth for Anthony Williams.

- The CRI told Deputy Wood that he or she had been at the St. Paul residence within the past 72 hours, during which time he or she observed Anthony Williams in possession of several firearms.

- Deputy Wood checked Anthony Williams's criminal history through the Minnesota Bureau of Criminal Apprehension. Anthony Williams had convictions in 1992, 1995, and 1999 for third degree sale of drugs; a domestic assault conviction in 2004; a violation of an order for protection in 2005; and a pending domestic assault charge in 2006.

- Deputy Wood provided that based on his training and experience, it is common for individuals who traffic in controlled substances to keep weapons to protect their drug trafficking enterprise, as well as quantities of controlled substances, currency and other evidence of drug trafficking in the residences they rent or own.

- Deputy Wood maintained that the information conveyed to him by the CRI was based on the CRI's personal knowledge and direct observations. Deputy Wood also asserted that he independently corroborated the information provided by the CRI. Further, Deputy Wood attested that the CRI had provided him and other officers in the past with information that has resulted in the recovery of large amounts of controlled substances; the arrests, charging and convictions of multiple narcotics violators; and accurate verified information about other narcotics violators who were under investigation.

See Government Ex. 1.

Given this information, a reasonable person could conclude that Anthony Williams was involved in narcotic activity and that contraband or evidence of a crime might be found on his person or at St. Paul residence, including the items sought to be seized by the warrant. Probable cause can be based on the information gathered via

a confidential informant if it is "sufficiently reliable." United States v. Thompson, 906 F.2d 1292, 1295-96 (8th Cir. 1990). "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if its corroborated by independent evidence." United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) (citing Draper v. United States, 358 U.S. 307, 313 (1959)); see also United States v. Morales, 238 F.3d 952, 953 (8th Cir. 2001). Moreover, "the 'corroboration of minor, innocent details can suffice to establish probable cause' [and] the corroboration of the tip's 'innocent' details made it reasonable to believe that descriptions of [the defendant's] illegal activities were accurate." United States v. Morales, 923 F.2d 621, 625 (8th Cir. 1991) (quoting United States v. Ramos, 818 F.2d 1392, 1397 n. 7 (8th Cir. 1987)) (other citations omitted).

Here, Deputy Wood had verified the identities of Dino and Char as Anthony and Chartiase Williams and also confirmed that they resided at the St. Paul residence, as alleged by the CRI, through his own investigation of the available records. Deputy Wood also confirmed that one of the cell numbers that the CRI claimed were given to him or her by Anthony Williams, had a subscriber with the same birth date as Anthony Williams. This corroboration of innocent facts, coupled with the CRI's past reliability as an informant, provided sufficient probable cause for the issuance of the search warrant for Anthony Williams's person and the St. Paul residence. Accordingly, Anthony Williams's motion to suppress evidence should be denied.[3]

---

[3] This Court also notes that the unannounced entry authorized by the search warrant was appropriate given the CRI's representations that he or she had been at

## II.   MOTION TO SUPRESS STATEMENTS

On June 19, 2007, Anthony Williams ("Williams") was indicted by a federal grand jury for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  See Docket No. 1.  On June 21, 2007, after Williams was arrested, Special Agent Andrew Hromyak, of the Bureau of Alcohol, Tobacco, Firearms and Explosives, interviewed him.  Special Agent Hromyak identified himself and Williams asked why he was being arrested, and Special Agent Hromyak replied that he had been indicted for being a felon in possession of a firearm.  Williams then responded, "Why?  Because of the guns found under the bed in that house that I don't even live in?"  Special Agent Hromyak then told Williams not to say anything else until he had been advised of his rights.  Special Agent Hromyak read Williams his Miranda rights, and Williams answered a few more questions before deciding that he did not want to talk any further.  Williams argued that his statement to Special Agent Hromyak, after he was advised what he was being arrested for, should be suppressed as its admission at trial

---

the St. Paul residence within the past 72 hours, during which time he or she observed Anthony Williams in possession of several firearms.  United States v. Stevens, 439 F.3d 983, 988-989 (8th Cir. 2006) (finding that a no-knock search warrant was justified based on the presence of the sawed-off shotgun in a common area of the house as reported by a confidential informant); Lyons v. Robinson, 783 F.2d 737, 739 (8th Cir. 1995) (per curium) (recognizing that firearms are tools of the drug trade).  However, even if the Court had found that the issuance of the no-knock warrant was improper, violation of the knock-and-announce requirement would not require suppression of evidence found during the search.  "The exclusionary rule does not apply to violations of the knock-and-announce requirement of the Fourth Amendment."  United States v. Gaver, 452 F.3d 1007, 1008 (8th Cir. 2006) (citing Hudson v. Michigan, 126 S.Ct. 2159, 2165 (2006)).

6

would violate his Sixth Amendment right to counsel. Defendant's Supplemental Memorandum in Support of Suppression Motions at p. 3

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  The Supreme Court has held that "an accused is denied 'the basic protections' of the Sixth Amendment 'when there [is] used against him at his trial evidence of his own incriminating words, which federal agents . . . deliberately elicited from him after he had been indicted and in the absence of his counsel.'" Fellers v. United States, 540 U.S. 519, 523 (2004) (quoting Massiah v. United States, 377 U.S. 201, 206 (1964), citing Patterson v. Illinois, 487 U.S. 285 (1988) (holding that the Sixth Amendment does not bar postindictment questioning in the absence of counsel if a defendant waives the right to counsel)).  The deliberate-elicitation standard has been consistently applied in subsequent Sixth Amendment cases and has been expressly distinguished from the Fifth Amendment custodial-interrogation standard.  Fellers, 540 U.S. at 524.  Therefore, in order for Williams to prevail on the claim that his Sixth Amendment right to counsel was violated, he must show that his right to counsel had attached, that Special Agent Hromyak was a government agent, and that Special Agent Hromyak deliberately elicited incriminating statements from him.  See Moore v. United States, 178 F.3d 994, 999 (8th Cir. 1999).

Here, there is no dispute that that Williams's right to counsel had attached, given his indictment for being a felon in possession of a firearm, and that Special

Agent Hromyak was a government agent. Thus, the question is whether Special Agent Hromyak deliberately elicited incriminating statements from Williams. See Moore, 178 F.3d at 999.

Williams argued that this case is indistinguishable from that of Fellers, supra, where the Supreme Court held a post-indictment discussion between a defendant and police officer at the defendant's home violated the defendant's Sixth Amendment rights The Court disagrees. In Fellers, the Supreme Court found "there was no question that the officers in this case 'deliberately elicited' information" from the defendant where the officers went to the defendant's home and told the defendant that they were there to discuss his involvement in methamphetamine distribution and his association with certain charged co-conspirators. See Fellers, 540 U.S. at 521, 524. Here, Williams initiated the dialogue by asking Special Agent Hromyak why he was being arrested and Special Agent Hromyak answered his question. There is nothing in the record to suggest that by responding to Williams's question, Special Agent Hromyak was doing anything to deliberately elicit information from Thomas regarding the facts underlying the charge. Lacking any evidence to support Williams's contention that his Sixth Amendment right to counsel was violated, the Court finds no basis for suppressing Williams's statements. As such, Williams's motion to suppress his statement should be denied.

**RECOMMENDATION**

For the reasons set forth above and based on all the files, records, and proceedings herein,

IT IS RECOMMENDED that:

1. Anthony Isaac Williams's Pretrial Motion to Suppress Evidence [Docket No. 14] be **DENIED**.

2. Anthony Isaac Williams's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 15] be **DENIED**; and

3. Anthony Isaac Williams's Motion to Suppress Statements, Admissions and Answers [Docket No. 16] be **DENIED**.

Dated:   September 27, 2007

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 15, 2007**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **October 15, 2007**.